# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANTHONY A. KUKLINSKI, | : | |
| 530 Michigan Avenue | : | |
| Elizabethtown, Kentucky 42701 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. _____ |
| | : | |
| UNITED STATES DEPARTMENT | : | |
| OF THE TREASURY, | : | **JURY TRIAL DEMAND** |
| 1500 Pennsylvania Avenue, NW | : | |
| Washington, D.C. 20220, | : | |
| | : | |
| and, | : | |
| | : | |
| JACOB JOSEPH LEW | : | |
| 1500 Pennsylvania Avenue, NW | : | |
| Washington, D.C. 20220 | : | |
| | : | |
| Serve: Jacob Joseph Lew | : | |
| 1500 Pennsylvania Avenue, NW | : | |
| Washington, DC 20220 | : | |
| | : | |
| | : | |
| United States Department | : | |
| of the Treasury | : | |
| 1500 Pennsylvania Avenue, NW | : | |
| Washington, DC 20220 | : | |
| | : | |
| and | : | |
| | : | |
| Ronald C. Machen, Jr. | : | |
| Judiciary Center Building | : | |
| 555 Fourth Street, NW | : | |
| Washington, D.C. 20530 | : | |
| | : | |
| Defendants. | : | |

# **COMPLAINT**

Comes now Plaintiff ANTHONY A. KUKLINSKI, through his attorneys with HANNON LAW GROUP, and for his Complaint against Defendants states as follows:

## INTRODUCTION

This action is for declaratory, injunctive and equitable relief and compensatory and punitive damages to redress discrimination and retaliation in employment, including terms and conditions, incidents and privileges of employment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* against Defendants.

## PARTIES

1. Plaintiff Anthony A. Kuklinski is a resident of the State of Kentucky, and an Inspector with the U.S. Mint Police at the U.S. Bullion Depository in Fort Knox, Kentucky.

2. Defendant United States Department of the Treasury ("Treasury") is an executive agency of the United States.

3. Defendant Jacob Joseph Lew is the Secretary of the Department of the Treasury. Defendant Lew is being sued in his official capacity as the agency head of the Department of the Treasury.

## JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States and presents a federal question within this Court's jurisdiction under 42 U.S.C. § 2000(e) *et seq*.

5. Venue is appropriate in this Court pursuant to 13 U.S.C. § 1391 as the U.S. Mint Police is a sub-part of the Treasury, which is located within this District.

6. Plaintiff has exhausted his administrative remedies and is entitled to file this civil action pursuant to 42 U.S.C. § 2000(e) et seq.

## FACTS COMMON TO ALL COUNTS

### Background

7. Inspector Kuklinski is currently an Inspector with the U.S. Mint Police at the U.S. Bullion Depository in Fort Knox, Kentucky ("U.S. Mint Facility"), and has been with the Agency since 1990, and been at the Facility from 1990-2000, and again since 2004.

8. During the period of time relevant to this Complaint, Inspector Kuklinski directly supervised 3 shift lieutenants, 6 shift sergeants, and approximately 48 subordinate officers.

9. In 2008 Inspector Kuklinski was approached by one of his subordinate officers who complained that a co-worker was sexually harassing her.

10. Inspector Kuklinski in his supervisory capacity was responsible for determining whether the officer in his command accused of sexually harassing another officer should be disciplined.

11. During the investigation Inspector Kuklinski learned that the harassing officer had by used the facility's security cameras to track the female officer's movements in the facility, placed recording devices around the facility to capture her conversations, maintained a journal in his locker detailing fantasies of murdering the harassed officer, and surveilled her from under her porch at her residence in a rural area, and otherwise spied on the harassed officer.

12. Inspector Kuklinski recommended that the harassing officer be removed from his position, and Inspector Kuklinski advised the harassed officer that it was her right to seek the assistance of an EEO counselor to remedy any adverse impact she perceived in the workplace.

13. The harassed officer did file a formal EEO complaint. At the request of the EEOC investigator, on February 10, 2011, Inspector Kuklinski provided a declaration, under the penalty of perjury, for the EEOC's investigation.

14. In the declaration, Inspector Kuklinski acknowledged that he had contacted U.S. Mint headquarters about his concerns of a potentially hostile work environment for the harassed officer and had encouraged the officer to contact an EEO counselor. Inspector Kuklinski also noted that on June 7, 2010, he had contacted Deborah Hayes at EEO Headquarters to explain to her what had been going on between the two officers and to express his concerns regarding a potentially hostile work environment for the female officer.

15. Despite Inspector Kuklinski's recommendation that the harassing officer be removed, Inspector Kuklinski's superiors undertook to protect the harassing officer, intimidate the female officer, to suppress criticism by Inspector Kuklinski of the harassing officer, and to disregard Inspector Kuklinski's recommendation that the officer be removed.

16. Pursuant to this plan by Inspector Kuklinski's superiors, after the filing of her EEO complaint, the female officer became the subject of an internal administrative investigation in which she was falsely accused of lying to authorities in a civil case. The harassed officer alleged that the accusations were made by the harassing officer against whom she had filed her EEO complaint and that the investigation was initiated in reprisal for her filing an EEO complaint.

17. During the EEO investigation of the harassed officer's complaint, Inspector Kuklinski also was placed under investigation by the Mint for allegedly having an "inappropriate social relationship" with the female officer. This baseless accusation cause undue stress on Inspector Kuklinski as well as his spouse.

18.     The administrative investigation against Inspector Kuklinski was found to be unsubstantiated.

19.     Shortly after the conclusion of this administrative investigation, in April of 2011, Inspector Kuklinski was then placed under investigation by the Treasury's OIG and the Office of Personnel Management for "possible misconduct" relating to activities that developed during his routine security clearance update, and which potentially jeopardized his security clearance if found to be true.  During this investigation Inspector Kuklinski was removed from his position as Inspector, and placed in an administrative position, with no law enforcement authority and menial and demeaning work duties.  He was removed from the Mint's main building and relocated at a work bench in the maintenance building.  When the maintenance workers needed their work bench back, Inspector Kuklinski was moved into the maintenance building "break room", which was a kitchen facility.

20.     After receiving little more than silent treatment from his superiors since April 2011, on November 7, 2011, Inspector Kuklinski received notice that his Access to Classified Information and his security clearance were officially suspended, due to the entirely pretextual investigation.

21.     Though the Mint knew that there were no valid grounds for suspension of Inspector Kuklinski's security clearance, it delayed reinstating his security clearance in order to prolong its exposure of Inspector Kuklinski to the degrading and humiliating workplace located in the "break room".

22.     The supervisory officials responsible for this action have a history of delaying administrative investigations to make the workplace intolerable, intending to evoke resignation or retirement of the employee, and it is evident that the U.S. Mint has used these unsubstantiated

"security concerns" against Inspector Kuklinski in an attempt to intimidate Inspector Kuklinski into leaving his job. This longstanding strategy was also intended to send a message to others who might displease their superiors.

23.     As the security investigation was utterly baseless, upon intervention by counsel for Inspector Kuklinski, his security clearance was reinstated, and on March 1, 2012. Inspector Kuklinski received a letter from Lester Leach, Assistant Director for Security, notifying him that the suspension of his Access to Classified Information was rescinded and that his security clearance was restored, effective immediately; however, Inspector Kuklinski did not have his supervisory authority restored. Inspector Kuklinski then was moved into a storage room in the maintenance building, which had been used to store paint. An "office" was set up for him in the storage room, despite actual offices being available in the main building.

24.     On the same day that his security clearance was reinstated, Inspector Kuklinski received a letter from U.S. Mint Police Deputy Chief Bill Bailey notifying him of a directed reassignment from his current duty location at the U.S. Bullion Depository in Fort Knox, Kentucky, to the U.S. Mint Headquarters in Washington, D.C., effective May 20, 2012. Inspector Kuklinski alleges that this action, as well as his prior treatment and the investigations, are in retaliation for his involvement in the prior EEO matter relating to the sexual harassment of the female officer.

25.     The U.S. Mint continues to retaliate against Inspector Kuklinski for his open opposition to discrimination and for his participation in the EEO complaint by the harassed officer.

26.     Inspector Kuklinski as the supervisory officer sought to have the harassing officer proposed for removal. His efforts to protect the female officer—who subsequently reached a

significant settlement of her complaint and reinstatement—and correct the discrimination reached the highest levels of the U.S. Mint. As a result of the U.S. Mint's decision to protect the harassing officer, high level officials removed Inspector Kuklinski from any leadership role regarding discipline of the harassing officer.

27. As a result of Inspector Kuklinski's involvement in the disciplinary action, he had his security clearance suspended and was removed from his office in the main building and placed at an isolated table in a break room based on an unjustified and unsubstantiated investigation regarding "security concerns", and then moved into a converted maintenance storage room.

28. Though the investigations were closed without any findings, and his security clearance reinstated, Inspector Kuklinski has not been returned to his regular office, has not been removed from the storage room, and was told by Deputy Chief Bill Bailey that he will not be returned to his former supervisory position.

29. After his security clearance was reinstated, on March 21, 2012, Commander Paul D. Constable made a pretextual visit to Inspector Kuklinski at his post. Commander Constable explained that he had suggested Inspector Kuklinski for the special position in the District of Columbia to which Inspector Kuklinski was being involuntarily transferred. Constable claimed that he needed a way to get the Mint Intel program off the ground. Constable claimed that the Mint was not getting the type of intelligence information that it needed in the District of Columbia office.

30. Constable recognized that Inspector Kuklinski has no training for the position and stated that he wanted to send Inspector Kuklinski to the CI (Criminal Investigator) course at FLETC (Federal Law Enforcement Training Center) and other courses that might be beneficial.

He admitted, however, that another Inspector had already received this training, "but we just need to get the program started."

31.     In fact, no Inspector at the U.S. Mint has ever been exposed to an involuntary transfer.  The other Inspector who had received the CI training, was hired by the Mint Police a few years ago from Treasury OIG specifically to work in the Intel/Investigations Division of the Mint, and is a trained investigator, and there are trained investigators with many years of investigation experience and intelligence gathering experience who are better qualified for this position and involuntary transfer rather than Inspector Kuklinski.

32.     Inspector Kuklinski has very little investigative background in formal intelligence gathering, outside of regular street informant gathering and observation and reporting as a Federal Air Marshal.

33.     The reassignment is a substantial geographical change, but is also an entirely new position, involving substantially different duties and responsibilities, for most of which Inspector Kuklinski has minimal experience.

34.     Inspector Kuklinski will also no longer carry his current supervisory duties and will be required to work with and under new people, participate in new training programs, and perform work unrelated to his current position.

35.     Inspector Kuklinski was informed that if he refused the directed reassignment, he would be involuntarily separated from the U.S. Mint and be left unemployed.

36.     The U.S. Mint has instituted this directed reassignment after its security clearance investigations were futile, as a way to force him to quit.

**Procedural Background**

37. Inspector Kuklinski filed a formal EEO Complaint on June 27, 2012, as a result of the U.S. Mint's directed reassignment from his supervisory position and duty location in Fort Knox, Kentucky, to a non-supervisory position at the headquarters office location in Washington, D.C., and on the basis of the treatment by the U.S. Mint after his participation in the EEO activity.

38. After the EEO Complaint was filed, Agency representatives sought to mediate Inspector Kuklinski's claims. These proceedings were intended to be confidential.

39. At the mediation, Inspector Kuklinski's attorney produced photographs of the workspace—located in a windowless converted paint room—to demonstrate Inspector Kuklinski's working environment. The Agency, despite the confidentiality of the proceedings, provided those photographs to Inspector Kuklinski's superiors at the U.S. Mint facility; whereupon, they sought to have Inspector Kuklinski disciplined for taking photographs of the facility in violation of unstated security concerns. Ultimately, no adverse action was taken.

40. In an additional confidential settlement overture, the Agency requested that Inspector Kuklinski's medical records be submitted so that an expert could assess his claim for psychological damages. The expert found that Inspector Kuklinski's working conditions likely exacerbated a medical condition suffered by Inspector Kuklinski and caused psychological injury. The Agency representatives then provided the confidential medical opinion letter to Inspector Kuklinski's superiors at the facility, and Inspector Kuklinski was ordered to undergo a fitness for duty test, in the latest attempt to remove him from the Agency. This action was withdrawn after protest from Inspector Kuklinski's counsel.

41. The EEO investigation was conducted from August 2012 to February 2013.

42. After an investigation, a Final Agency Decision was requested, and received on July 1, 2013.

## COUNT ONE:

## UNLAWFUL RETALIATION UNDER 42 U.S.C. § 2000e

43. Plaintiff adopts and incorporates by reference each and every allegation set forth in the previous paragraphs as if the same were set forth in full in this Count.

44. Chapter 42, Section 2000e-3(a) of the United States Code prohibits an employer from discriminating or retaliating against an employee because that employee "[1] ... has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

45. The aforementioned acts of Defendants were willful, reckless, and malicious acts of unlawful discrimination and retaliation against Plaintiff that were and are based on Inspector Kuklinski's participation in the harassed officer's EEO claim, and his opposition to discrimination by the U.S. Mint. Defendant's acts of retribution were and are in violation of the provisions of Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. § 2000 *et seq*.

46. The aforesaid discriminatory and retaliatory treatment by Defendants towards Inspector Kuklinski caused tangible harm to Plaintiff in that they affected the terms, conditions, and privileges of his employment.

47. Inspector Kuklinski suffered adverse actions by his employer after he engaged in protected activities, and the adverse actions were caused by his engagement in the EEO Complaint process and his opposition to the Defendants' discriminatory practices.

48. Inspector Kuklinski also suffered insult, embarrassment and other damages as a direct and proximate result of Defendants' actions.

49. Inspector Kuklinski has additionally suffered medical damages stemming from the physical stress and mental trauma of this action, and litigation expenses relating to this action including attorney's fees, consequential damages, and other injuries.

## COUNT TWO:

## CONSTRUCTIVE DISCHARGE

50. Plaintiff adopts and incorporates by reference each and every allegation set forth in the previous paragraphs as if the same were set forth in full in this Count.

51. In retaliation for Inspector Kuklinski's participation in the EEO investigation and opposition to the acts of discrimination, the U.S. Mint deliberately created intolerable working conditions and has done so with the intention of forcing Inspector Kuklinski to quit.

52. After Inspector Kuklinski's participation in the EEO investigation and his opposition to the acts of discrimination, he had his security clearance suspended, was given meaningless work, had his supervisory authority revoked, and was removed from his office in the main building and placed at an isolated table in a break room based on an unjustified and unsubstantiated investigation regarding "security concerns", and then relegated to a windowless converted paint storage room, despite the availability of more suitable offices.

53. The investigations were closed without any adverse findings, yet Inspector Kuklinski has not been returned to his regular office, has not been removed from the break room, and was told by his Deputy Chief that he will not be returned to his former supervisory position.

54. The day that Inspector Kuklinski's security clearance was reinstated he was issued with notice that he was being forced to transfer to Washington D.C. from Kentucky – a

transfer that the U.S. Mint knows is practically impossible for Inspector Kuklinski and his family. The reassignment is not only a substantial geographical change, but is also an entirely new position, involving substantially different duties and responsibilities, most of which Inspector Kuklinski has minimal experience doing.  Inspector Kuklinski will no longer carry his current supervisory duties and will be required to work with and under new people, participate in new training programs, and perform work unrelated to his current position.  Inspector Kuklinski will be involuntarily separated from the U.S. Mint should he not accept the involuntary transfer.

55.     If the involuntary transfer is not withdrawn by the Agency, Inspector Kuklinski will be forced to resign.  No other Inspector for the U.S. Mint has ever been subject to an involuntary transfer of this kind.

56.     As a direct and proximate cause of the Defendants' retaliatory actions, Inspector Kuklinski is being constructively discharged, or will be actually discharged if he does not accede to the Defendants' directed transfer.

57.     As a direct and proximate cause of each of the intentional and willfully punitive actions by the Defendant, Inspector Kuklinski has suffered damages, including but not limited to, actual pecuniary damages and actual non-pecuniary damages in the form of direct and indirect injury to Plaintiffs reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset, mental anguish, physical pain and physical suffering, and damage to career and his professional reputation.  Plaintiffs damages are ongoing and continuing.

## **PRAYER FOR RELIEF**

WHEREFORE, Inspector Kuklinski prays for the following relief:

a.  A declaratory judgment that the conduct engaged in by Defendants was a violation of Plaintiff's legal rights;

b.  An injunction enjoining Defendants from engaging in such conduct in the future;

c.  An injunction enjoining Defendants from directing Inspector Kuklinski's transfer from Fort Knox, Kentucky;

d.  Lost fringe benefits and/or front salary and benefits to Inspector Kuklinski that he would have received but for Defendants' actions;

e.  An award of statutory compensatory damages (pecuniary and non-pecuniary) up to the maximum amount permitted by relevant and applicable law;

f.  An order directing Defendants to pay reasonable attorney's fees and costs of this litigation as provided by 42 U.S.C. § 2000e-5(k) and/or F.R.C.P. 54(d)(1);

g.  An order requiring Defendants to take other appropriate nondiscriminatory measures to overcome the effects of discrimination and retaliation;

h.  Punitive damages in an amount deemed reasonable according to relevant and applicable law; and

i.  For any such incidental and other further relief to which Inspector Kuklinski may show himself justly entitled.

## **JURY DEMAND**

Inspector Kuklinski hereby demands a trial by jury of all issues of fact and law raised by the allegations in this Complaint.

>
> Respectfully submitted,
>
> HANNON LAW GROUP
>
>
> _____/s/ J. Michael Hannon_____
> J. Michael Hannon, Bar No. 352526
> J. Scott Hagood, Bar No. 996658
> 1901 18th Street, N.W.
> Washington, D.C.  20009
> (202) 232-1907
> (202) 232-3704, Facsimile
> jhannon@hannonlawgroup.com
> shagood@hannonlawgroup.com
>
> Attorneys for Plaintiff Anthony A. Kuklinski